IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING,<br><br>     Plaintiff,<br><br>     v.<br><br>ESCORT, INC. and BELTRONICS USA, INC.,<br><br>     Defendants. | Case No.  1:CV 09-105-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Fleming's motion to strike certain paragraphs of the report of Escort's expert, Dr. John Grindon. The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

## ANALYSIS

Fleming seeks to preclude Dr. Grindon from testifying as to certain opinions contained in his expert report, specifically those opinions at paragraphs 21 to 50 and 53 to 108. These paragraphs cover separate topics, and the Court will group them together by topic for purposes of analysis.

### Paragraphs 21 through 42

One of Escort's defenses to Fleming's charge of infringement is that Escort's devices lock out false signals by using a process different from that described in Fleming's patents. Escort alleges that false signals are locked out of Fleming's invention when the device reaches a predetermined distance from the predetermined position of a false signal, but with Escort's

**Memorandum Decision & Order - 1**

devices, "the distance from a lockout varies." *See Supplemental Report of Dr. Grindon (Dkt. No. 188-1) at p. 8.*[1]

Escort's expert, Dr. Grindon, concluded, among other things, that "the asserted claims of the '038 patent are not infringed" by Escort's devices. *Id.* at pp. 1-8. In his claim-by-claim analysis set forth in that Supplemental Report – at paragraphs 21 through 42 – he concludes that Escort's products do not infringe claims 1, 3, 5, 6, 7, 8, 23, 25, 26, and 27 of the '038 patent because those claims describe a device that locks out an alert if the device is a predetermined distance from a predetermined false signal, while with the Escort products, "the distance from a lockout varies." *Id.*

Dr. Grindon never explains how the Escort products lock out false signals. In its brief, Escort claims that Dr. Grindon – in his Supplemental Report and through that Report's incorporation of Interrogatory Answers – has identified the lines of source code that perform the function of locking out false signals on Escort devices, and that by identifying the source code, has explained how the Escort products function so that "the distance from a lockout varies." But there is no such explanation in Dr. Grindon's Supplemental Report. It is true that his Supplemental Report refers in a very general sense to Interrogatory Answers. That reference is as follows:

> In addition . . . Escort's Supplemental Responses to Fleming Revised Seventh Set of Interrogatories sets forth in detail the relevant portions of source code in the accused devices which support my opinions about the missing elements in the asserted claims. Those citations to the source code are to be considered a part of this report and Exhibit C.

---

[1] Escort had earlier filed the *Initial Report* of Dr. Grindon. His *Initial Report* and his *Supplemental Report* are largely identical, the only difference being that his *Supplemental Report* responds to Fleming's *Supplemental Report* regarding the Passport iQ. For ease of reference, the Court will cite to portions of Dr. Grindon's *Supplemental Report* in the body of this decision.

**Memorandum Decision & Order - 2**

*Id*. at p. 8.  Dr. Grindon says nothing further that might reveal how that source code supports his opinions.  When the Interrogatory Answers themselves are examined, they are equally opaque.  The Interrogatories Dr. Grindon is referring to asked Escort to "identify (by page and line number) the portion of [Escort's] source code for each Accused Infringing Product that corresponds to the claim element."  *See Exhibit A (Dkt. No. 195-1)* at p. 3.  Escort's typical answer looks like this:

> Claim 1 – generating an alert if the position of the device is not within a predetermined distance of a predetermined position (the '038 patent)
> Lines: 1901-1918
> Lines: 3621-3627
> Lines: 3665-3715
> Lines: 4719-4899
> Lines: 4924-4982
> Lines: 8453-8474
> Lines: 9979-10026
> Lines: 10030-10047

*See Exhibit A (Dkt. No. 195-1)*.  By listing these lines of source code under a quote from a portion of claim 1 (relating to claim 1(c)), Escort is merely representing, in response to the Interrogatory query, that they "correspond to that claim element" – that is, that they "correspond" to claim 1(c) of the '038 patent.  There is no specific representation in the Interrogatory Answers – or in Dr. Grindon's expert report – that these particular lines of source code allow Escort products to function so that "the distance from a lockout varies."  In other words, the connection between that specific opinion of Dr. Grindon and the above list is so vague as to be nonexistent.

But even assuming that these are the lines of code ensuring that "the distance from a lockout varies," Dr. Grindon fails to explain how these lines of code perform that function.  That failure is significant:  The source code itself is like a strange foreign language to a lay person,

**Memorandum Decision & Order - 3**

and its connection to Dr. Grindon's opinions must be explained by an expert to make any sense. *See Caro v. Calderon,* 165 F.3d 1223, 1227 (9th Cir.1999) (noting the need for expert testimony to explain a possible causal connection between the defendant's exposure to toxic pesticides and aggressive behavior because an understanding of that kind of link is not within the common knowledge of lay persons).

Escort intends to have Dr. Grindon provide this explanation at trial: "Furthermore, should the Court permit Dr. Grindon to testify at trial, his testimony regarding the details of his non-infringement opinion, especially his review of the source code on which he relies, will undoubtedly assist the jury in determining the issue of infringement."  *See Escort Brief (Dkt. No. 195)* at p. 10.  But Dr. Grindon cannot be allowed at trial to "review" the source code when he failed to do so in his expert report.  *See Case Management Order (Dkt. No. 64)* (stating that "[p]ursuant to Local Rule 26.2(b), expert witnesses will not be allowed to offer any opinion not disclosed in the mandatory Rule 26 disclosures, supplementation, or deposition"); *see also* Fed.R.Civ.P. 26(a)(2), advisory committee's note, 1993 amendments (stating that Rule 37(c)(1) "provides an incentive for full disclosure; namely , that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed").

Because Dr. Grindon is precluded at trial from explaining how the source code performs the lockout function, his testimony that the source code supports his opinions – without that explanation – will not "help the trier of fact to understand the evidence or to determine a fact in issue."  *See Federal Rule of Evidence 702.*  Just at the moment the jury most needs his help – to explain how the source code works – Dr. Grindon will have nothing to say.

Moreover, the test for reliability under Rule 702 is "the soundness of the [expert's]

**Memorandum Decision & Order - 4**

methodology." *See Stilwell v. Smith & Nephew, Inc., 482 F.3d 1187, 1192 (9th Cir. 2007)*. There is no way for the Court or the jury to evaluate Dr. Grindon's methodology when he has failed to explain how the source code works. In essence, his opinion is the classic "black box," asserting that the source code makes the products non-infringing because he says so. *See Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 607 (9th Cir. 2002)* (holding that the district court is not required to "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert").

Escort argues that it is unfair for Fleming to wait until just before trial to challenge Dr. Grindon's expert report because Fleming has had the report for over a year. If Fleming challenged the report earlier, Escort argues, Dr. Grindon would have had time to amend his report to add the necessary explanations. But this argument ignores the Court's Case Management Order, quoted above, that precludes experts from testifying to anything that is not in their report. If the Court were to allow endless amendments upon every challenge, the Court would also need to reopen discovery and delay all the deadlines and ultimately extend the trial date. The Case Management Order is quite clear that such a process is unacceptable.

Escort argues that Fleming suffers no prejudice because its own expert, Dr. Bartone, rendered an opinion on whether the lines of source code cited by Dr. Grindon support his opinions. But Dr. Bartone was forced to assume what Dr. Grindon's ultimate opinion would be because Dr. Grindon has never revealed it. Neither Fleming nor Dr. Bartone has any assurance that their assumption as to how Dr. Grindon will testify will match his actual testimony at trial. And that is precisely what the Case Management Order seeks to avoid. Fleming is prejudiced because the first time it will hear how the source code works from Dr. Grindon will be at trial.

**Memorandum Decision & Order - 5**

For all of these reasons, the Court will grant Fleming's motion to preclude Dr. Grindon from testifying to the opinions contained in paragraphs 21 through 42 of his expert report where he concludes that Escort's products do not infringe claims 1, 3, 5, 6, 7, 8, 23, 25, 26, and 27 of the '038 patent because those claims describe a device that locks out an alert if the device is a predetermined distance from a predetermined false signal, while with the Escort products, "the distance from a lockout varies." *See Report of Dr. Grindon (Dkt. No. 188-1)* at pp. 1-12.

**Paragraphs 42 -50 and 53-108**

Dr. Grindon renders other opinions on why Escort products do not infringe Fleming's patents in paragraphs 42 to 50 and 53 to 108 of his expert report. For example, in paragraph 45 he renders an opinion that the Escort products do not infringe claim 28 (a dependent claim of claim 1) of Fleming's '038 patent because they "do not store signal strength." *Id*. at ¶ 45. Once again, he lists lines of Escort's source code that generally relates to claim 28, but fails to explain how that source code works to support his opinion. Once again, Dr. Grindon testifies that the source code supports his opinion without any explanation. The first time Fleming will hear how the source code allows Escort products to function without storing signal strength will be at trial.

This example is representative of the other opinions set forth in these paragraphs; they all suffer from this identical – and fatal – flaw. Accordingly, for the reasons expressed above, the Court will preclude Dr. Grindon from testifying to the opinions contained in paragraphs 42-50 and 53-108 of his expert report.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Fleming's *Daubert* motion

(docket no. 188) is GRANTED, and that Dr. John Grindon will be precluded at trial from testifying to the opinions contained in paragraphs 42 to 50 and 53 to 108 of his Supplemental Report.



DATED:  **May 23, 2012**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 7**