IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING,<br><br>                    Plaintiff,<br><br>         v.<br><br>ESCORT, INC. and BELTRONICS<br>USA, INC.,<br><br>                    Defendants. | Case No.  CV 09-105-S-BLW<br><br>MEMORANDUM DECISION |

## INTRODUCTION

Following a jury trial in this patent infringement case, the jury found that defendants (collectively referred to as Escort) infringed certain claims of two patents held by plaintiff Fleming, and awarded damages of $750,000.  Some legal claims remained, and the Court ordered further briefing that has now been received.  In that briefing, Escort raises three legal defenses to Fleming's claims.  For the reasons explained below, the Court rejects all three defenses.  The Court will also grant Fleming's motion that Escort pay the $750,000 into an escrow account, and will deny Escort's motion to redact a portion of the transcript.  The case is now fully resolved, and the Court will issue a separate Judgment as required by Rule 58(a).

**Reissued Patents**

Both of Fleming's patents were "reissued" pursuant to 35 U.S.C. § 251.  Escort claims that both patents are invalid because they were improperly reissued under that statute.  Determining whether a reissued patent violates § 251 is a question of law.  *See Medtronic Inc. v. Guidant Corp.,* 465 F.3d 1360, 1373 (Fed. Cir. 2006).

To resolve this issue, the Court will first review the reissue process in this case.  In

**Memorandum Decision - 1**

2001, Fleming received his original patent, the '798 patent.  Later, Fleming became aware of another patent – the Ross patent – and new products on the market, made by Uniden, Cobra, and Escort.  In light of these discoveries, Fleming reviewed his '798 patent and realized that some of its claims were too broad and others too narrow.  More specifically, he decided to narrow some claims because they might be invalid as written in light of the Ross patent, and he decided to broaden other claims to encompass the new products on the market.

To make these changes, Fleming asked the PTO to reissue his '798 patent.  He filed two reissue applications, and the PTO granted both, resulting in the reissued patents '038 and '653.

Under the reissue statute, a patentee may surrender a patent and seek reissue if "through error without any deceptive intent" he claimed "more or less than he had a right to claim in the patent." See 35 U.S.C. § 251. The statute "is remedial in nature, based on fundamental principles of equity and fairness, and should be construed liberally." *MBO Labs, Inc. v. Becton, Dickinson & Co.*, 602 F.3d 1306 (Fed. Cir. 2010).  Notwithstanding its remedial nature, the reissue statute has limits. "The reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute de novo his original application." *In re Weiler*, 790 F.2d 1576, 1582 (Fed.Cir.1986). For example, reissue claims are invalid when the patentee broadens the scope of a claim in reissue to cover subject matter that he surrendered during prosecution of the original claims. *See Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1480 (Fed.Cir.1998).  A related limit is that an "error" under § 251 cannot include the deliberate action of an inventor or attorney during prosecution. *See In re Serenkin*, 479 F.3d 1359, 1362 (Fed.Cir. 2007).  "The distinction is between a genuine error, or mistake, and a deliberate, but subsequently found to be

**Memorandum Decision - 2**

disadvantageous, choice." Id.

Based on the trial testimony, the Court finds that Fleming made a genuine error rather than a deliberate choice that later proved disadvantageous.  The Court finds credible Fleming's testimony that he did not discover his drafting errors until almost two years after the '798 patent issued.  When the inventor has made a genuine mistake, there is nothing improper about seeking a reissue to ensure that the patent covers a competitor's products.  *Kingsdown Medical Consultants, Ltd. v. Hollister Inc*., 863 F.2d 867, 874 (Fed.Cir. 1988).  Indeed, one of the most commonly asserted "errors" in support of a broadening reissue is the failure of the patentee "to appreciate the full scope of the invention during the prosecution of the original patent application."  *Hester,* 142 F.3d at 1479. "This form of error has generally been accepted as sufficient to satisfy the 'error' requirement of §251."  *Id.*  That is the type of error that Fleming committed here.

Escort argues that Fleming failed to explain how he "only came to appreciate his inventions at some later time."  *See Reply Brief (Dkt. No. 328)* at p. 3.  But Fleming did explain this – he testified that in the process of checking for errors in his '798 patent, years after it issued, he discovered for the first time the Ross patent and analyzed for the first time competitor's products that had just entered the market.  It was these discoveries that led him to "appreciate" the errors he had made in his '798 patent and prompted him to seek reissued patents.

The Court cannot find merit in any of the arguments raised by Escort on this issue. Escort has not identified anything in the record which undermines Fleming's claim that these were innocent errors, rather than a calculated decision intended to obtain some tactical

**Memorandum Decision - 3**

advantage.   And, Flemings' testimony to that effect at trial was credible.  Accordingly, the Court

finds that the '038 and '653 patents satisfy the requirements of 35 U.S.C. § 251.

**Intervening Rights**

Escort argues that it has established the defense of intervening rights. Under this defense,

Escort argues that it engaged in substantial research and development of its products before the

date of Fleming's reissued patents, giving it certain intervening rights to engage in what would

otherwise be infringing conduct.

The Court disagrees.  Intervening rights cannot arise where a party is found to infringe

original claims in a reissue patent.  *BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d

1214, 1220 (Fed. Cir. 1993) ("The accused infringer may raise the defense of intervening rights

only when none of the infringed claims of the reissue patent were present in the original

patent."); 35 U.S.C. § 252.  It is undisputed that claims 3, 5, 6, and 7 in the '038 patent are

identical to claims 3, 5, 6, and 7 in the original '798 patent.  Moreover, the jury found each of

those claims valid and infringed.  *See Special Verdict (Dkt. No. 304).*  Thus, as a matter of law,

Escort is not entitled to intervening rights.

**Indefiniteness**

Escort claims that the phrase "data received from the button" in the '653 patent is too

indefinite to be enforced.  Indefiniteness is a purely legal issue.  *Star Scientific Inc. v. R.J.*

*Reynolds Tobacco Co.,* 655 F.3d 1364, 1372 (Fed. Cir. 2011).

A claim is indefinite "if the construction remains insolubly ambiguous, meaning it fails to

provide sufficient clarity about the bounds of the claim to one skilled in the art."  *Id.*  "Absolute

clarity is not required to find a claim term definite."  *Id.*  A claim "may be definite even when

**Memorandum Decision - 4**

discerning the meaning is a 'formidable [task] and the conclusion may be one over which reasonable persons will disagree.'" *Id.* (quoting *Source Search Tech., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1076 (Fed.Cir.2009)).  Claims with meanings that are in dispute will be interpreted in a *Markman* hearing, while other claims that have a plain and ordinary meaning are definite in themselves and require no further elaboration or interpretation.  *See Pagemelding Inc. v. Feeva Technology, Inc*., 2009 WL 2588883 at *10 (N.D. Cal. Aug. 19, 2009).

In the present case, prior to the *Markman* hearing, Escort offered interpretations of 26 phrases from the two patents.  Specifically, Escort claimed that the phrase "data received from the button" contained in the '653 patent was indefinite and that it should be interpreted as "information received in relation to use or operation of a user interface."  *See Escort's Claim Construction Brief (Dkt. No. 37)* at pp. 16-17.  In support of this argument, Escort submitted the testimony of Dr. Grindon who confirmed that the interpretation offered by Escort was proper. *See Dr. Grindon Report (Dkt. No. 37-7)* at p. 23.

Judge Downes then held a *Markman* hearing and issued a decision interpreting only four of the phrases, not including the phrase "data received from the button."  With regard to the other 22 phrases, Judge Downes rejected Escort's interpretations: "With regard to the other interpretations sought by [Escort], the Court rejects them as they add unnecessary complexity to terms that are used in their plain English sense."  *See Memorandum Decision (Dkt. No. 56)* at p. 3.  In other words, Judge Downes rejected the interpretation offered by Escort of the phrase "data received from the button" because it was a phrase that required no elaboration.

The Court agrees with Judge Downes' analysis.  The phrase is written in plain English and requires no further interpretation.  *Pagemelding*, 2009 WL at *10 (rejecting further

**Memorandum Decision - 5**

interpretation of claim that was in "plain English" with an "ordinary meaning" that "speaks for itself").  Accordingly, the Court finds no merit in Escort's argument here.

**Fleming's Motion for Escrow or Injunction**

Fleming asks the Court to order Escort to either place $750,000 in an escrow or, if an escrow is not ordered, to enjoin Escort from selling the infringing products.  Escort responded by agreeing to place the money in escrow.  The parties agreed to use the Huntington Bank as escrow agent but cannot agree to the terms of the escrow.  Escort seeks to modify the Bank's standard form to allow it (Escort) to withdraw the funds at any time.

Escort's dispute over the escrow's terms raises a question whether it has agreed to an escrow at all.  Regardless, the Court finds that Escort must place the $750,000 in escrow.  The testimony at trial revealed Escort's precarious financial situation, and that fact justifies the escrow.  *See Carter-Wallace Inc. v. Davis-Edwards Pharmacal Corp.*, 443 F.2d 867, 884 (2nd Cir. 1971).

The Court approves the use of Huntington Bank as escrow agent.  The Court further agrees with Fleming that the escrow release provisions should be limited to the following circumstances:  (1) as jointly directed by Mr. Fleming and defendants (in the event of a settlement or otherwise), and (2) as ordered by the Court.  The Court rejects the modifications sought by Escort.

The Court will consequently grant Fleming's motion for an escrow and deny the request for an injunction.

**Escort's Motion to Redact Transcript**

Escort seeks to seal from public view certain portions of the trial transcript where

Memorandum Decision - 6

Escort's  business and financial information were discussed.  The matters were discussed on the record during the public trial, and no attempt was made by Escort at that time to seal the proceedings or otherwise protect the information from disclosure.

In determining whether to seal part of the judicial record, the Court "must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture."  *Foltz v. State Farm*, 331 F.3d 1122, 1135 (9th Cir. 2003).  Escort has the burden of providing "compelling reasons" for sealing, and there is a "strong presumption in favor of access. *Id.* at 1135. This presumption applies even to documents that have been sealed pursuant to a protective order.  *Id.* "Unlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default."  *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006).

In *Apple, Inc. v. Samsung Electronics Co. Ltd.,* 2012 WL 4936595 (N.D. Cal. Oct. 17, 2012), Apple sought to seal from the public the evidence of its sales, revenues, cost, and profit margins.  The court refused, finding that this information was produced at a public trial.  *Id*. at *3.  Once there has been public disclosure at trial, any interest in confidentiality lessens in light of the public's interest of understanding the judicial process.  *See TriQuint Semiconductor, Inc. v. Avago Technologies Ltd.*, 2012 WL 1432519 (D. Ariz. April 25, 2012) (refusing to redact sensitive business information produced at public trial).  Certainly, there are instances where sensitive information is "blurted out" at trial, or where similar circumstances requiring sealing.  *Id*. at *4.  But that was not the case here – Escort purposely introduced the financial information as part of its trial strategy.

For all of these reasons, the Court will deny Escort's motion to redact.

**Memorandum Decision - 7**

**<u>Conclusion</u>**

       This matter has now been fully resolved.  The Court will enter a separate Judgment as required by Rule 58(a).

                             DATED:  **March 27, 2013**

                             B. LYNN WINMILL
                             Chief Judge
                             United States District Court

**Memorandum Decision - 8**